**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1392-22

MICHAEL DUNN,

    Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, DIVISION OF
LAND USE REGULATION,

    Respondent-Respondent.

_____

Argued March 11, 2024 - Decided March 28, 2024

Before Judges Sabatino, Marczyk and Chase.

On appeal from the New Jersey Department of Environmental Protection.

John Scott Abbott argued the cause for appellant.

Bruce A. Velzy, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Bruce A. Velzy, on the brief).

PER CURIAM

This appeal concerns the Department of Environmental Protection's ("DEP's") denial of a homeowner's request to build a pier six feet westward of its previous location when he renovated his bayfront property. Specifically, petitioner Michael Dunn appeals the DEP's denial of his application for a Waterfront Development Individual Permit under N.J.A.C. 7:7-8.1. The DEP denied his application because the pier lost its so-called "legacy status" when it was moved from its previous location and, consequently, it required the new pier to be reduced in width to comply with current DEP limitations. We affirm.

We derive the relevant facts, which are essentially undisputed, from the administrative record. Within one year of buying this bayfront residential property in Avalon in 2015, Dunn obtained a permit from the DEP allowing him to reconstruct the home, install an outdoor in-ground pool, and modernize his dock, pier, and boat ramp on the bay (together, the "water structures"). Dunn replaced the home and water structures and built a pool.

After completing the construction, Dunn applied to the DEP for a permit modification to reflect the relocation of the water structures approximately six feet westward of their previous location. His application was prepared by an environmental consultant.

The DEP denied Dunn's application for a modification because the water structures' relocation ended their legacy status as structures that had been "constructed prior to September 1978" under N.J.A.C. 7:7-12.5(e). According to the DEP, the loss of legacy status required the new construction to meet current size limitations. Specifically, that meant that the width of any structure may not exceed eight feet. The widths of the preexisting and relocated piers were both 13.94 feet. Hence, Dunn had to reduce the water structures 5.94 feet in width to comply with the current maximum width of eight feet. The DEP assigned the matter to its Bureau of Coastal & Land Use Compliance and Enforcement "for further action for the existing waterfront structures."

Dunn contested the denial of his permit application. Among other things, he asserted the relocation of the water structures was necessary "to provide a direct pathway from the dock to [his] home without needing to go around [his] newly built in-ground pool."

The permit dispute was referred to the Office of Administrative Law ("OAL") for presentation to an administrative law judge ("ALJ"). Both sides moved for summary decision, based on the documentary record.[1]

_____

[1] A neighbor initially participated in the administrative matter in opposition to the permit, but is not participating in this appeal.

In a written decision dated July 8, 2022, ALJ Jeffrey R. Wilson dismissed Dunn's challenge in a summary decision. The DEP Commissioner adopted the ALJ's ruling in its entirety in a written final agency decision dated November 21, 2022, which is the subject of this appeal.

In his brief on appeal, Dunn principally argues the DEP and the ALJ misinterpreted the pertinent regulations to deny him the right to renovate his legacy water structures in their same general locations. Based on calculations by his consultant, Dunn stresses that his rebuilt structures cover thirty percent less water area than the previous ones. He further asserts his relocation of the structures was de minimis, and that the DEP's permit denial is arbitrary, capricious, and unreasonable. Dunn also contends his request must be granted pursuant to the so-called "Zane Amendments" to the applicable environmental statutes, codified at N.J.S.A. 12:5-3(b)(1) to (b)(3).[2]

In assessing these arguments on appeal, we are guided by familiar principles. It is well-established that appellate courts "will not reverse an agency's decision unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or

_____

[2] The Zane Amendments were enacted in 1981 and are named after their sponsor, Senator Raymond Zane.

Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007). "Generally, courts afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing." Ibid. That said, an appellate court, however, is not bound "by the agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

Summary decisions under N.J.A.C. 1:1-12.5 are governed by "substantially the same [standard] as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015) (quoting Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995)). Courts must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

The present case concerns the Waterfront Development Law ("WDL"),

N.J.S.A. 12:5-1 to -11.  The WDL was enacted in 1914 to consolidate oversight of the growing construction of docks and other water structures for "the principal concern . . . to promote commerce and navigation."  Last Chance Dev. P'ship v. Kean, 232 N.J. Super. 115, 119-20 (App. Div. 1989).  This purpose is reflected in N.J.S.A. 12:5-2, a section of the WDL that empowers the DEP to "prevent the encroachment or trespass upon the waterfront" and to "compel the removal of any such encroachment or trespass."

Under the WDL, "[a]ll plans for the development of any waterfront upon any navigable water or stream of this State . . . which involves the construction or alteration of a dock, wharf, pier, bulkhead, bridge, pipeline, cable, or any other similar or dissimilar waterfront development shall be first submitted to the [DEP]."  N.J.S.A. 12:5-3(a) (emphases added).

The DEP reviews waterfront development plans pursuant to the Coastal Zone Management ("CZM") Rules.  N.J.A.C. 7:7-1.1 to -29.10.  These regulations contain "the procedures for reviewing coastal permit applications" and "the substantive standards for determining development acceptability and the environmental impact of projects for which coastal permits are submitted."  In re Protest of Coastal Permit Program Rules, 354 N.J. Super. 293, 312 (App. Div. 2002).

The DEP promulgates and enforces the CZM Rules pursuant to its authority under the Coastal Area Facility Review Act ("CAFRA"), N.J.S.A. 13:19-1 to -21, which the Legislature enacted "to protect the unique and fragile coastal zones of the State." In re Egg Harbor Assocs. (Bayshore Ctr.), 94 N.J. 358, 364 (1983).

The CZM Rules "are founded on . . . broad coastal goals" including: protecting "[h]ealthy coastal ecosystems"; "[s]afe, healthy and well-planned coastal communities and regions"; and maintaining "[m]eaningful public access to and use of tidal waterways and their shores[.]" N.J.A.C. 7:7-1.1(c). The CZM Rules further the purpose behind CAFRA, "to protect the unique and fragile coastal zones of the State." Egg Harbor, 94 N.J. at 364. "[T]he powers delegated to DEP" under CAFRA "extend well beyond protection of the natural environment" and require the agency "to regulate land use within the coastal zone for the general welfare." Ibid.

There are three exceptions, known collectively as the "Zane Amendments," N.J.S.A. 12:5-3(b)(1) to (b)(3), to the WDL's requirement to obtain prior approval from the DEP before commencing construction of "a dock, wharf, pier, bulkhead, bridge, pipeline, cable, or any other similar or dissimilar waterfront development." N.J.S.A. 12:5-3(a). Relevant here is the first listed

exception:

> The repair, replacement or renovation of a permanent dock, wharf, pier, bulkhead or building existing prior to January 1, 1981, provided the repair, replacement or renovation does not increase the size of the structure and the structure is used solely for residential purposes or the docking or servicing of pleasure vessels[.]
>
> [N.J.S.A. 12:5-3(b)(1) (emphasis added).]

Here, the applicable regulation, N.J.A.C. 7:7-12.5, requires reduction of legacy water structures to current size limits if, as here, they are relocated. The regulation states as follows:

> For sites which have existing dock or pier structures exceeding eight feet in width over water areas and/or wetlands, which were constructed prior to September 1978 and for which the applicant proposes to increase the coverage over the water area or wetland by relocating or increasing the number or size of docks or piers, the existing oversized structures must be reduced to a maximum of eight feet in width over water areas and six feet in width over wetlands and intertidal flats.
>
> [N.J.A.C. 7:7-12.5(e).]

N.J.A.C. 7:7-12.5(g) expressly states the purpose of the size restriction is to "maximize sunlight penetration into the water and onto the bottom [to] allow the continuation of photosynthesis by plants underneath the structure." Dunn did not present any evidence sufficiently demonstrating a need for oversized structures that could not be served by the preexisting structures.

8

The DEP's January 7, 2002 comment to the proposed regulation, 34 N.J.R. 74(a), 97, explains why the DEP wants to limit the environmental impact of "legacy" piers that were built before the eight-foot width limitation was adopted in 1978. That explanation supports the agency's position that its permit denial in this case was not arbitrary, capricious, or unreasonable.

Dunn emphasizes his relocated structures actually cover less water area than the old ones. Even if that is true, it does not overcome the plain wording of the regulation concerning width limitations and the required demonstration of an applicant's necessity to excuse excessive width.

The DEP's strict interpretation of N.J.A.C. 7:7-12.5(e) to treat any relocation as terminating legacy status is supported by the proposal published in the New Jersey Register by the DEP before enacting N.J.A.C. 7:7-12.5, which explains the regulatory intention that by "relocating the docks, the existing structure is no longer the same structure," 34 N.J.R. 74(a), 97 (Jan. 7, 2002). The DEP's position is also fortified by the definition of a "reconstruction" within N.J.A.C. 7:7-1.5 as "the repair or replacement of a building, structure, or other parts of a development, provided that such repair or replacement does not increase or change the location of the footprint of the preexisting development." (emphasis added).

9                                                    A-1392-22

Simply stated, despite his counsel's robust arguments, Dunn's pier lost its legacy status when he decided to relocate it. Whether such relocation was de minimis because it was only six feet is inconsequential.

Because the relocated pier no longer has legacy status, the DEP appropriately evaluated the pier under N.J.A.C. 7:7-12.5(b)—the development limits on recreational docks and piers—and found deficiencies under (b)(1) ("There is a demonstrated need that cannot be satisfied by existing facilities") and (b)(7) ("Under typical circumstances, the maximum width of the structure shall be eight feet over water").

The DEP did not unreasonably reject Dunn's stated need of easier access to the pier to avoid having to walk around his new in-ground pool. In addition, the DEP's rejection of his post-construction request for a permit modification was reasonable, given that the WDL specifies that the construction of piers and similar structures requires pre-construction approval from the DEP. In particular, N.J.S.A. 12:5-3 states "No such development or improvement shall be commenced or executed without the approval of the [DEP] first had and received, or as hereinafter in this chapter provided." (emphases added). The focus on pre-construction approval is reinforced by N.J.S.A. 12:5-6(a), which states "[a]ny development or improvement . . . which is commenced or executed

without first obtaining approval . . . shall be deemed to be a violation under this section." The DEP is empowered to remedy violations through civil penalties, removal of offending structures, and other measures. N.J.S.A. 12:5-6(b) to (g).

We also reject Dunn's argument that the relocation of the pier was necessary to leave enough space between the pier and other structures to comply with N.J.A.C. 7:7-12.5 (generally requiring an eight-foot separation between adjacent structures). Although this point was not addressed in the ALJ's ruling, it is not apparent from the record supplied on appeal that compliance could not be achieved by Dunn reducing his pier width to eight feet.

Lastly, Dunn does not qualify for any of the three statutory Zane Exemptions that would obviate the requirement to seek DEP approval. Section 12.5(b)(1) is the only exception that applies to piers, and it is not supportive of Dunn's position. Section (b)(1) exempts the "repair, replacement or renovation" of preexisting structures. The DEP reasonably determined the exemption does not apply to Dunn because the statute only exempts the rehabilitation of legacy structures, not the construction of new structures in the same general area as preexisting ones. This interpretation is supported by Governor Byrne's conditional veto to S. 3231 in 1981, which amended the language of (b)(2) to mirror (b)(1) by removing "construction" from "repair, replacement or

renovation" so that "repairs to existing waterfront structures be freed from a burdensome regulatory process . . . [but] new construction of <u>floating docks</u> . . . should continue to be reviewed by the [DEP]." (Emphasis added). Dunn's new construction includes not only a floating dock but also a fixed pier and a ramp.

In sum, the DEP reasonably exercised its regulatory authority to deny Dunn's permit modification. Its decision was neither arbitrary, nor capricious, nor unreasonable given the circumstances presented.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1392-22